UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BATHSHEBA N. HODGE,

    Plaintiff,

    v.

FADY SABA, *et al.*,

    Defendants.

Case No. 1:24-cv-2247-MJS

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Bathsheba Hodge previously worked as a server at L'Avant-Garde, an upscale French restaurant located in the Georgetown neighborhood of Washington, D.C. According to Hodge, after she shared with L'Avant-Garde the news that she was pregnant, restaurant management allegedly began subjecting her to a variety of harassment and negative treatment. And after Hodge complained about this alleged treatment to the restaurant's owner, Fady Saba ("Saba"), she alleges that management cut her shifts and soon fired her. Hodge then filed suit. Through this case, she pursues various claims of pregnancy discrimination, harassment, and retaliation against Ezekiel Entertainment, LLC ("Ezekiel")—the official legal entity that operates L'Avant-Garde— and against Saba and one of Hodge's former managers, Samuel Holley ("Holley"). Defendants now move for judgment on the pleadings as to several of Hodge's claims, seeking the dismissal of all claims against Saba and Holley individually and the dismissal of Count VII entirely. (ECF No 30.) The Court agrees with some of Defendants' arguments, but not all. So, for the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## BACKGROUND

The Court derives most of the below facts from the Amended Complaint, and, at this stage, accepts them as true. *Thompson v. Dist. of Columbia*, 530 F.3d 914, 915 (D.C. Cir. 2008). Further, because Hodge is a *pro se* litigant, the Court at times considers the Amended Complaint alongside other filings. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).

Hodge began working at L'Avant-Garde as a server in January 2023. (ECF No. 3 ("Am. Compl.") ¶ 13.) For the first several months, she had a good relationship with her coworkers and her managers. (*See* Am. Compl. ¶ 14; *see also* ECF No. 3-1 at 43–45, 47–49.) In June 2023, Hodge shared with restaurant management the news that she was pregnant. (Am. Compl. ¶ 15.)

The next month, in July 2023, Holley joined L'Avant-Garde as the restaurant's new Service Director / General Manager. (Am. Compl. ¶ 16.) Due to a complication with her pregnancy, Hodge did not work any shifts during Holley's first few days with the restaurant, but she communicated with him directly about her pregnancy and her related absences. (*Id.* ¶¶ 17, 19.) Soon after, Hodge alleges that Holley began singling her out and treating her negatively, including by speaking to her in "harsh tones," following her around during shifts, reprimanding her unnecessarily, and questioning her competency in front of restaurant guests. (*Id.* ¶¶ 24–27.) Hodge also alleges that Holley stopped scheduling her for preferred shifts and private events—including one for a foreign dignitary—and "overloaded" her with tables on shifts that she did work. (*Id.* ¶¶ 28–32.)

After a couple weeks, on July 22, 2023, Hodge sent an email to Saba—L'Avant-Garde's owner and operator—to complain about Holley's treatment toward her. (Am. Compl. ¶ 33; *see also* ECF No. 3-1 at 24–32.) Among other things, Hodge expressed her concerns about a "hostile environment" and how she felt that Holley was "singling [her] out" because she was "pregnant." (ECF No. 3-1 at 32 ("I feel as though Samuel [Holley] has been singling me out, and he does not

2

feel like I am fit to be an employee at your establishment because I am pregnant.").) Saba acknowledged receipt of that email the following day, and he sent a substantive response back on July 27, 2023, after speaking with Holley. (Am. Compl. ¶ 34; *see also* ECF No. 3-1 at 34–38.) According to the Amended Complaint, restaurant management immediately cut her shifts by more than half (from five shifts to two shifts). (Am. Compl. ¶ 35.) And the next day, on July 28, 2023, Hodge alleges that Saba told her in person that "when she was '100% well again,' she could come back and join the team." (*Id.* ¶ 41.) Hodge seemingly took this to mean she was being fired from L'Avant-Garde, such that Saba allegedly "terminated her on account of her pregnancy." (*Id.* ¶ 45.)

Hodge then initiated a complaint of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). Hodge represents that she completed an intake interview with the EEOC on April 19, 2024, and signed a formal amended charge on April 30, 2024. (*See* ECF No. 32 ("Pl.'s Opp'n") at 3; ECF No. 33-1 ("Am. EEOC Charge").)[1]

In the section of the EEOC charge that asked Hodge to name the "employer" she believes "discriminated against" her, Hodge listed only "L'Avant-Garde." (*See* Am. EEOC Charge.) Elsewhere in the charge, however, Hodge provided the following "particulars":

> I was hired by the above-named employer in or around January 2023 as a waitress. On July 5, 2023, I informed the General Manager, who was my direct supervisor, that I would not be reporting to work due to my pregnancy. Since July 5, 2023, I have been subjected to treatment, which included, but was not limited to, assigning extra work beyond the normal workload, giving me additional responsibilities such as having to train a new hire, run drinks, and course out meals for two dining rooms at once with no assistance or support. On July 22, 2023, I submitted a formal complaint to the owner, Faby [sic] Saba, regarding the hostile work environment. I was told that he would get back to me once he had spoken with the General

---

[1] Because the EEOC charge is integral to and incorporated by the complaint, the Court properly considers its contents at this stage. *See Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 31 n.11 (D.D.C. 2019) (considering, on a Rule 12(c) motion, "materials from [plaintiff's] administrative proceedings."). The Court notes that although Hodge says that she initiated her original "administrative charge with the EEOC in November 2023 while pregnant" (Pl.'s Opp'n at 3), neither side provided the Court with a copy of that charge, so the Court's analysis is necessarily limited to the details of the "amended" charge filed on April 30, 2024.

3

> Manager. Consequently, on July 27, 2023, my shifts were reduced to only 2 shifts instead of my usual 5. July 28, 2023, was my last day at work.
>
> I believe I was discriminated against on the basis of my pregnancy and retaliated against for submitting a formal complaint to the owner Faby [sic] Saba, in violation of the Pregnancy Workers Fairness Act. I also believe I was discriminated against because [of] my national origin, African American, sex female, in violation of Title VII of Civil Rights Act of 1964 as amended.

(*Id.*) Thus, in the body of the charge, Hodge twice identified Saba by name. She also twice referenced a "General Manager," but she never identified Holley by name.

On May 2, 2024, just a few days after Hodge filed that charge, the EEOC issued her a right-to-sue letter. (Pl.'s Opp'n at 3.) Hodge then filed this case on July 31, 2024. (ECF No. 1.)

Through the operative complaint, Hodge, proceeding *pro se*, asserts seven claims for relief: (1) gender discrimination under the D.C. Human Rights Act ("DCHRA"); (2) pregnancy discrimination under the D.C. Protecting Pregnant Workers Fairness Act ("PPWFA"); (3) retaliation under the DCHRA; (4) pregnancy discrimination under the federal Pregnancy Discrimination Act and Title VII of the Civil Rights Act of 1964 ("Title VII"); (5) sex discrimination under Title VII; (6) harassment under Title VII; and (7) a claim for "embarrassment, humiliation, and indignity violations" under a D.C. regulation. (*See generally* Am. Compl.)

After some fits and starts at the outset of the case, Hodge ultimately facilitated service on Defendants, and Defendants timely filed an answer on March 25, 2025. (ECF No. 15.)

Defendants now bring this motion for (partial) judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (ECF No. 30.) Defendants ask the Court to dismiss all counts against Saba and Holley individually—some as time-barred, and some on other legal grounds—and to dismiss the D.C. municipal code claim in Count VII against all Defendants as legally nonviable. (*See id.*)[2] The motion is fully briefed and ripe for decision. This ruling now follows.

---

[2] Defendants do not seek dismissal of Counts I through VI against Ezekiel.

4

**LEGAL STANDARD**

A motion for judgment on the pleadings is proper "after the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). "Pleadings include any copy of a written instrument that is an exhibit to a pleading, such as relevant and authentic documents attached to the complaint." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019) (citation and quotations omitted). To prevail, "[t]he moving party must demonstrate its entitlement to judgment in its favor, even though the court evaluating the 12(c) motion will accept as true the allegations in the opponent's pleadings, and as false all controverted assertions of the movant." *Id.* at 760–61 (citation and quotations omitted). And courts "must give 'all reasonable inferences to the opponent's pleadings' before entering a judgment on the pleadings." *Id.* at 761 (quoting *Wager v. Pro*, 575 F.2d 882, 884 (D.C. Cir. 1976)).

Separately, because Hodge is proceeding *pro se*, the Court must apply an especially "liberal reading to [the] complaint," *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014), including by treating "technical deficiencies in the complaint leniently" and scrutinizing "the entire pleading to determine if any legally cognizable claim can be found," *Spence v. United States Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024) (cleaned up). This leniency requires consideration of "supplemental material" filed by a *pro se* litigant, including any facts in an opposition brief. *Id.* (quoting *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007)).

**ANALYSIS**

Defendants' motion attacks several of Hodge's claims in several different ways. First, Defendants press for dismissal of her DCHRA and PPWFA claims (Counts I through III) against Saba and Holley as time-barred by the governing statutes of limitations. Second, Defendants argue that Hodge's Title VII claims (Counts IV through VI) against Saba and Holley fail as a matter of

5

law because the statute does not authorize individual liability against them. And third, Defendants argue that Hodge's claim under the D.C. municipal regulations (Count VII) should be dismissed in its entirety because it is not a viable, freestanding claim under the law. Because resolution of the latter two arguments is considerably more straightforward, the Court starts with those issues before returning to Defendants' timeliness arguments on Hodge's D.C. claims.

## I.    Hodge's Title VII Claims Against The Individual Defendants (Counts IV–VI)

Through Counts IV through VI, Hodge brings various claims under Title VII. (Am. Compl. ¶¶ 60–71.) Defendants argue that these claims are facially improper as to Saba and Holley because Title VII does not provide a basis for personal, individual liability. (ECF No. 30-1 ("Defs.' Mem.") at 6–7.) Defendants are correct: "Title VII does not allow for suits against individuals in their personal capacities." *Thomas v. Washington Metro. Area Transit Auth.*, 305 F. Supp. 3d 77, 87 n.4 (D.D.C. 2018) (citing *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995)); *see also, e.g.*, *Brown v. Children's Nat'l Med. Ctr.*, 773 F. Supp. 2d 125, 134–35 (D.D.C. 2011). Seemingly acknowledging this authority, Hodge expressly "does not oppose dismissal of the Title VII claim against Defendants Saba and Holley only, in their personal capacities." (Pl.'s Opp'n at 4.) The Court will therefore grant Defendants' motion in this respect and dismiss both Saba and Holley as defendants on Counts IV through VI of the Amended Complaint.

## II.    Hodge's D.C. Municipal Regulation Claim (Count VII)

Through Count VII, Hodge asserts a claim for "embarrassment, humiliation, and indignity" under D.C. regulations. (Am. Compl. ¶¶ 72–75 (citing D.C. Mun. Regs. tit. 4, § 211).) Defendants correctly argue that the regulation she invokes does not support an independent cause of action. (*See* Defs.' Mem. at 7.) Rather, that regulation and the surrounding regulations in that chapter prescribe procedures for how the D.C. Commission on Human Rights should assess damages upon

6

determining that an employer has violated the DCHRA, in the context of administrative proceedings before the D.C. Office of Human Rights ("DCOHR"). In other words, Count VII's focus on "embarrassment, humiliation, and indignity" is better understood as describing the basis for certain types of damages that might be recoverable for a violation of the DCHRA, rather than a claim in its own right. Hodge acknowledges as much. She confirms that she no longer intends to "assert Count VII as a standalone claim" and that it should be "understood as part of [her] DCHRA claims." (Pl.'s Opp'n at 5.) So the Court will likewise grant Defendants' motion in this respect and dismiss Count VII of the Amended Complaint in its entirety.

### III. Hodge's DCHRA Claims Against The Individual Defendants (Counts I and III)

Through Counts I and III, Hodge alleges pregnancy discrimination and retaliation under the DCHRA. (Am. Compl. ¶¶ 48–51, 56–59.) Relevant here, the DCHRA makes it unlawful for an employer "to treat an employee affected by pregnancy" differently from "an employee not so affected but similar in the employee's ability or inability to work." D.C. CODE § 2-1402.11(a)(1)(B). The DCHRA separately makes it unlawful for an employer to "retaliate against" an employee for engaging in an activity protected by the DCHRA. *Id*. § 2-1402.61(a).

Defendants seek dismissal of Hodge's DCHRA claims against Saba and Holley on the basis that they are time-barred by the applicable statute of limitations. (Defs.' Mem. at 4–5.) The D.C. Council recently amended the DCHRA to provide for a two-year statute of limitations, but at the time of the events at issue, the statute prescribed a one-year limitations period. *See* D.C. CODE § 2–1403.16(a); *see, e.g.*, *Valentine v. George Washington Univ.*, 2025 WL 2029802 at *5 n.5 (D.D.C. July 21, 2025) ("The D.C. Council has recently established a two-year statute of limitations for DCHRA claims, but that change does not apply retroactively.").[3] Defendants

---

[3] The amendment was enacted through the Fairness in Human Rights Administration Amendment Act of 2024, which the D.C. Council passed on December 17, 2024, and which Mayor Muriel Bowser signed into

7

maintain that the pre-amendment, one-year limitations period governs here, and Hodge agrees. (Defs.' Mem. at 4–5; Pl.'s Opp'n at 2.) The Court's analysis proceeds on that basis.

Here, as Defendants observe, the last act of alleged discrimination or retaliation in support of Hodge's claims took place on July 28, 2023, her final day of work. (Am. Compl. ¶¶ 41, 45.) Defendants argue, in turn, that because Hodge did not file her case until more than a full year later, on July 31, 2024, her claims are untimely, *i.e.*, three days late. (Defs.' Mem. at 4–5.) Despite the simplicity of this argument—and the fact that it would similarly defeat Hodge's DCHRA claims against Ezekiel if it applied so straightforwardly—Defendants do not seek dismissal across the board on this basis, but only as to Saba and Holley. Hodge's opposition reveals why: as Hodge rightly argues, the filing of her EEOC charge triggered tolling of the DCHRA's limitations period. (Pl.'s Opp'n at 2–3.) In reply, Defendants implicitly acknowledge this general premise—and thereby implicitly acknowledge the timeliness of Hodge's DCHRA claims against Ezekiel—but dispute that any tolling applies to her claims against Saba or Holley. Defendants are half right.

Begin with the basics. The DCHRA expressly states that "[t]he timely filing of a complaint" with the DCOHR "shall toll the running of the statute of limitations while the complaint is pending." D.C. CODE § 2–1403.16(a). And importantly here, the DCHRA's "tolling provision is also 'triggered by the timely filing of a complaint with the EEOC' pursuant to a worksharing agreement between the EEOC and Office of Human Rights." *Alexander v. Wash. Metro. Area Transit Auth.*, 826 F.3d 544, 551 (D.C. Cir. 2016) (per curiam) (quoting *Jaiyeola v. Dist. of Columbia*, 40 A.3d 356, 369 (D.C. 2012)); *see also Viardo v. Fams. USA Found., Inc.*, 2025 WL 2336223, at *3 (D.D.C. Aug. 13, 2025) (recognizing same); *Jenkins v. Dist. of Columbia*, 2023 WL 4183795, at *5 (D.D.C. June 26, 2023) (similar).

---

law on January 16, 2025. *See* Fairness in Human Rights Administration Amendment Act of 2024, D.C. Act 25-692, 72 D.C. Reg. 737 (Jan. 16, 2025).

8

The upshot is that the statute of limitations on Hodge's DCHRA claims, at least in general terms, was tolled during the pendency of her EEOC charge. And even counting only from the date of the amended charge she filed with the EEOC, that means Hodges claims were tolled for at least three days, from April 30 (the date of the amended EEOC charge) through May 2, 2024 (the date of her right-to-sue notice from the EEOC).[4] That supplies the extra three days that Hodge needs to render her DCHRA claims timely here, at least insofar as they were encompassed by the EEOC charge. And that latter point is really the crux of the dispute here—whether the claims against Saba and Holley were encompassed by Hodge's EEOC charge and thus subject to tolling.

Another judge in this District recently addressed a similar situation. *See Viardo*, 2025 WL 2336223, at *3–4. In *Viardo*, the plaintiff filed an EEOC charge naming only his former employer (Families USA) as the respondent in the charge, but not the individual defendant (the organization's Interim Executive Director) against whom the plaintiff likewise asserted DCHRA claims. There was "no question that the suit against Families USA was timely filed," but the defendants sought dismissal of the DCHRA claims against the individual defendant because the EEOC charge "never addressed her as a respondent." *See id.* at *3. The court's analysis started from the general proposition that "persons not specifically named in an EEOC charge cannot be sued in subsequent litigation." *Id.* (citing *EEOC v. Metzger*, 824 F. Supp. 1, 4 (D.D.C. 1993)). But because this general proposition is not meant to be "an inflexible requirement that reduces an EEOC charge to a box-checking exercise," the court likewise recognized that an individual not officially named in an EEOC charge can still be a proper defendant in a subsequent lawsuit so long as they had "actual notice of the EEOC proceedings or … an identity of interest with the party or

---

[4] To the extent Hodge filed her original charge with the EEOC in November 2023 as she suggests (*see* Pl.'s Opp'n at 2), then she would benefit from a considerably longer tolling period. But the Court does not have those details in the record—and certainly not the original charge itself—and the end-result would be the same in any event, since she only needs three days of tolling on the particulars of this case.

9

parties sued before the EEOC." *Id.* (quoting *Metzger*, 824 F. Supp. at 4). Applying these principles, *Viardo* concluded that the individual defendant fell within that exception to being expressly named, including because she was identified by title repeatedly throughout the charge's details, and because her high-level position made it "fair to infer" that she had notice of the charge or a "sufficient identity of interest" with the named employer. *See id.* at *4.

Applying the same line of reasoning here, the Court concludes that the EEOC charge fairly encompassed Hodge's claims against Saba, but not any claims against Holley.

Start with Saba. For one thing, the body of the EEOC charge expressly referenced him by name, not just once but twice. (*See* Am. EEOC Charge.) In fact, the charge explicitly ties Saba to the alleged retaliation that forms the basis for certain of Hodge's claims. (*Id.* ("I believe I was discriminated against on the basis of my pregnancy and retaliated against for submitting a formal complaint to the owner Faby [sic] Saba[.]").) More, Saba's role as the owner and operator of L'Avant-Garde (*see* Am. Compl. ¶ 33) makes him akin to the individual defendant in *Viardo* who occupied the "most senior position" with the employer. *See* 2025 WL 2336223, at *4; *see also Lanier v. Smedberg*, 2025 WL 2144075, at *8 (D.D.C. July 29, 2025) (reaching similar conclusion based on the "particular positions" of various C-suite executives at WMATA, who were all referenced by name in an EEOC charge). On these facts—especially Saba's ownership of L'Avant-Garde—it is fair to infer that he had notice of Hodge's EEOC charge and a sufficient identity of interest with L'Avant-Garde. Accordingly, the limitations period on Hodge's DCHRA claims against Saba was tolled during the pendency of her EEOC charge, rendering those claims timely.

Hodge's claims against Holley, however, are a different story. Unlike Saba, he is not referenced by name in the EEOC charge. Instead, only the title of "General Manager" is included. (*See* Am. EEOC Charge.) And although the role of "General Manager" is relatively senior, the

10

Court does not believe it creates the same "identity of interest" with L'Avant-Garde as exists for Saba, as the establishment's owner. Further, the Court cannot infer that the charge sufficed to give Holley notice of the charge, especially since there is no allegation showing that Holley was still the "General Manager" (or even employed by L'Avant-Garde at all) by the time Hodge filed her charge in April 2024. *Clay v. Howard Univ.*, 82 F. Supp. 3d 426, 434 (D.D.C. 2015) (reaching same conclusion where "the parties agree[d]" that an individual defendant "was no longer an employee" when the EEOC charge was filed). In fact, other documents submitted with Hodge's complaint suggest that someone else held the "General Manager" role by at least January 2024. (*See* ECF No. 3-1 at 49 (identifying "Bobby Rooney" as "Service Director | General Manager" for the restaurant).) Ultimately, there is simply not enough before the Court to infer that Holley fits within the "exception" to being formally named in the charge, so Hodge's DCHRA claims against Holley cannot benefit from tolling and were filed outside the limitations period.

Accordingly, the Court will dismiss Hodge's DCHRA claims in Counts I and III as against Holley as untimely. But because it finds the claims against Saba were timely filed once tolling is considered, it will deny Defendants' motion as to the DCHRA claims against Saba.

**IV.     Hodge's PPWFA Claims Against The Individual Defendants (Count II)**

Through Count II, Hodge alleges that Defendants violated the District of Columbia's Protecting Pregnant Workers Fairness Act, or the PPWFA. (Am. Compl. ¶¶ 52–55.) The PPWFA prohibits employers from "[r]efus[ing] to make reasonable accommodations to the known limitations related to pregnancy [or] related medical conditions." D.C. CODE § 32-1231.03(1). The Act also prohibits "[t]ak[ing] an adverse action against an employee who requests or uses a reasonable accommodation." *Id.* § 32-1231.03(2). By statute, claims under the PPWFA are governed by a one-year statute of limitations. *Id.* § 32-1231.06.

Defendants' theory for dismissal of Hodge's PPWFA claim mirrors their argument on the DCHRA claims—they say Hodge's PPWFA claims against Saba and Holley are untimely because Hodge filed her lawsuit on July 31, 2024, more than a year after the last allegedly unlawful act on July 28, 2023. (Defs.' Mem. at 4–5.) In response, Hodge again invokes tolling. (Pl.'s Opp'n at 2–3.) But the problem for Hodge this time around is that, unlike the DCHRA, which includes an express tolling provision that applies upon the filing of a DCOHR complaint (and, by extension, upon the filing of an EEOC charge), the PPWFA does not include any tolling language along these lines. The PPWFA is silent on that point. The rationale for tolling DCHRA claims in this context is premised on the statute's express tolling language. *See, e.g.*, *Esteños v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 885–86 (D.C. 2008) (emphasizing "the statute's tolling requirement"). In enacting the PPWFA, the D.C. Council chose not to include any similar tolling language here. And without any explicit tolling provision for PPWFA claims, the Court is left to apply guidance from the D.C. Court of Appeals to construe statutes of limitations under D.C. law "strictly … in accordance with their terms." *Waugh v. MedStar Georgetown Univ. Hosp.*, 203 A.3d 784, 788 (D.C. 2019) (quoting *Atiba v. Wash. Hosp. Ctr.*, 43 A.3d 940, 941 (D.C. 2012)). This result is reinforced by the fact that Hodge does not point to any cases applying tolling in this context to claims under the PPWFA, and the Court did not locate any such cases through its own research.

Thus, because the one-year statute of limitations on Hodge's PPWFA claims was not tolled by the filing of her EEOC charge, the Court will grant Defendants' motion on this basis and dismiss the PPWFA claims against Saba and Holley in Count II, as requested.

## CONCLUSION

For the reasons explained, Defendants' motion is **GRANTED IN PART**, and the Court therefore **DISMISSES**: (1) Counts I and III as against Holley; (2) Count II as against Saba and Holley; (3) Counts IV through VI as against Saba and Holley; and (4) Count VII as against all defendants. Given these rulings, Holley is **DISMISSED** as a named defendant altogether.[5] Finally, Defendants' motion is **DENIED IN PART** as to Counts I and III as against Saba. The Clerk of the Court is respectfully directed to mail this Memorandum Opinion and Order to Plaintiff at her address of record.

**SO ORDERED**.

Dated: October 17, 2025

                                                   MATTHEW J. SHARBAUGH
                                                 United States Magistrate Judge

---

[5] Of course, Holley's dismissal as a named defendant does not mean Hodge is foreclosed from pursuing discovery from Holley, whether in the form of certain written discovery or by way of deposition. To the extent Holley is still employed by L'Avant-Garde, Hodge may be able to pursue such discovery through Ezekiel's counsel. Otherwise, FED. R. CIV. P. 45 allows for discovery of third parties by way of subpoena.